### BUCKLEY V. COMMISSIONERS OF LORAIN CO.

ENJOINING COMMISSIONERS FROM ASSESSING COSTS OF SAME.

In an action to enjoin the county commissioners from apportioning to plaintiff's land, any portion of the cost of locating and constructing a proposed ditch, the court, having found there was no error in the record of the proceedings locating the ditch, may, upon the final hearing of the case, under section 4491, Revised Statutes, hear oral testimony as to the justice of the apportionment, and if the testimony produced upon said hearing, shows that the land of plaintiff will not be benefited by the proposed ditch, may perpetually enjoin the said commissioners from apportioning or assessing any portion of the cost or expense of said proposed ditch upon land of plaintiff.

This is an action originally brought to enjoin the commissioners of Lorain county, from constructing a proposed ditch across the lands of plaintiff, or assessing his lands with any portion of the cost of the same, upon the ground that the proceedings of said commissioners, in locating said proposed ditch, are illegal and void, and that said ditch will, if constructed, be of no benefit to the lands of the plaintiff, for the reason that said lands already have abundant natural drainage.    The case came on for hearing upon the records of the proceedings of the commissioners in locating said ditch, and the court having held said proceedings regular and valid, the same was then, upon final hearing, submitted to the court upon oral testimony, taken subject to exception, as to whether the proposed ditch, if constructed, will be of any benefit to the lands of the plaintiff. ·

The testimony showed that the proposed ditch is intended to drain a marsh of some twenty-five or thirty acres in extent, by opening certain watercourses, one to the east and one to the west, called main ditches, and that from these main ditches lateral ditches were projected across the plaintiff's land.

The marsh is situated in a basin, and plaintiff's land is upland, some third of a mile from the marsh, and at least twenty-five or thirty feet above it.

Across plaintiff's land is a depression or run, being a natural water channel, along which all the water, accumulating on his farm, or coming from beyond it, runs down across the intervening lands into the marsh, and fully drains said land of plaintiff.

Upon making the apportionment of work to be done upon both the main and lateral ditches, a greater amount per acre was assessed by the engineer and commissioners upon the lands of plaintiff, than upon the lands of the owner of the marsh lands.

This was done upon the theory entertained by these officers, that owners of the upland are bound in law to take care of the water falling or coming upon the upland, and not permit it to run down into the marsh, even though it should run in natural water channels; and as the owner of the upland did permit such water to run down into the marsh, that they should pay the greater part of the cost and expense of draining the same from the marsh.

HAYNES, J.

In this case we find from the evidence, that the proposed ditches will, if constructed, be of no practicable benefit to plaintiff's land; that his land is already sufficiently drained by the natural water course across it.

Question is made:

Whether we can hear oral evidence to show that the plaintiff's land is not benefited by the proposed ditch?

Whether the finding of the commissioners is not conclusive upon that question?

Section 4491, Revised Statutes, provides that, "without finding error the court may correct any gross injustice in the apportionment made by the commissioners; the court, on final hearing, shall make such order in the premises as shall be just and equitable    *    *    *    may perpetually enjoin such tax or assessment."

We have heretofore found that there is no error in the proceedings in locating the proposed ditch.

The fundamental principle which should govern the commissioners in making apportionment and assessment of cost and expenses of the work to be done, is briefly stated in section 4455, Revised Statutes, wherein it is directed that the apportionment to each lot or tract of land shall be "according to the benefits which will result to each from the improvement."

This provision of the statute will be more clearly understood by reference to some decision of the Supreme Court of this state, discussing and defining the nature and character of local assessments.

It may be premised that assessments made by municipal corporations for improvement of streets and construction of sewers are of the same nature as assessments by township officers and commissioners of counties for constructing ditches of the kind in question.

In Hill v. Higdon, 5 O. S., 243, the question of the constitutionality of laws authorizing municipal corporate authorities to levy special assessments upon property particularly benefited was raised, and fully discussed, and the court held: "Legislation authorizing cities and villages to levy special assessments, for the purpose of improving streets, upon real estate particularly and specially benefited, and in proportion to such benefit, is not repugnant to any provision of the constitution."

In Reeves v. Treasurer of Wood County et al., 8 O. S., 333, the same question was raised in regard to the right of trustees of townships to locate ditches and assess the cost of same upon lands benefited, and it was held that the right existed.

In each of these cases discussion is had of the character of assessments as compared with ordinary taxes, and in each it is said, "taxes are impositions for purposes of general revenue."

"Assessments are special and local impositions upon property in the immediate vicinity of an improvement for the public welfare, which are necessary to pay

for the improvement, and laid with reference to the *special benefit* which such property derives from the expenditure."

In Chamberlain v. The City of Cleveland, 34 O. S., 551, it is said by the court:

"To enable a municipal corporation to pay for a local public improvement, it may, by assessment, take from an individual whose lands are subject to assessment, such a portion of the cost thereof as is the *equivalent, but not in excess*, of the special benefits conferred thereby."

2. "The whole amount of the assessment must be apportioned amongst the several lots and parcels of land *specially benefited*, in the proportion that the special benefits to each lot or parcel bears to the whole special benefits conferred by the improvement."

At page 561, in delivering the opinion of the court, Judge Gilmore says:

"The right that gives to municipal corporations the privilege of resorting to this mode of taxation is not like the right of general taxation in the state founded on *necessity ;* on the contrary, the *right* of a municipal corporation to assess private property to pay for a local public improvement is *not* founded on *necessity*, but upon *principles of justice*, by which the public may take from an indivi u al, whose lands owing to their proximity to it are specifically benefited by the improvement, such a portion of the cost thereof as is the *equivalent*, but *not in excess* of the special benefits conferred by the improvement; and this principle of justice in itself impliedly furnishes the measure, and limits the extent of the right."

And at page 562, "But when the property has paid the value of the special benefits so conferred, its owners stand in the same relation to any residue of the cost of the improvement remaining unpaid, that other members of the public do, and all must bear the burden of paying such residue by general taxation. If a sum be exacted in any instance in excess of the value of the special benefits conferred, it is as to such excess, in that instance, *private property unjustly taken for public use without compensation to the owner*."

Enough has been cited to show the nature and character of an assessment and the foundation upon which it stands.

It was further held that in the Chamberlain case cited above, by a majority of the court, "that when the city council determines that the amount of the assessment does not exceed the benefits conferred, its judgment in the premises in the absence of fraud is final and conclusive; but when the municipal authorities do not undertake to determine the amount of the special benefits conferred, either in respect to the amount assessed or in the apportionment of the burden, the assessment may be enjoined; and in an action for that purpose, parol evidence may be introduced to show that the authorities did not act upon the proper basis.

The judge dissenting held, that in this state courts may interfere in matters of this sort when great injustice is done, even though fraud be not shown.

We think the clause in section 4491, that gives the courts power to correct gross injustice in apportionment made by the commissioners, was put in the statute to meet and obviate the very objection made herein; to wit, that the finding of the commissioners is conclusive, and that the court in order to act intelligently, must hear evidence as in other cases. We think, therefore, that the objection to the admission of oral evidence is not well taken, and that the court has the power to grant injunction as prayed.

That the apportionment is grossly unjust we have no doubt from the evidence.

It has arisen, not from any intentional wrong on the part of the commissioners or officers making the apportionment, but in part from mistaken ideas as to the duty of the owners of the upland in regard to water upon their lands, and in part we think, from lack of a correct idea of the nature and character of an

apportionment and assessment, and of the true principles that should govern in making the same.

That they were mistaken in their views of the duties of the owners of the upland, will appear from the statement of the Supreme Court in a case that went up from this county; in the case of Butler v. Peck, 16 O. S., 334, the court say *per* Judge Brinkerhoff, at page 342:

"The principle seems to be established and indisputable, that where two parcels of land belonging to different owners lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a servitude to the upper *to receive* the water which *naturally* runs from it, provided the industry of man has not been used to create the servitute." And to the same effect is Tootle v. Clifton, 22 O. S., 247.

We are of the opinion that the plaintiff is entitled to the relief prayer. It is therefore ordered, that the defendants be enjoined from apportioning or assessing any portion of the cost or expenses of the said ditch against the land of the plaintiff.

---

## RAILROADS. 256

[Guernsey Circuit Court, June Term, 1885.]

Laubie, Woodbury and Follett, JJ.

(Judge Follett of the Fifth Circuit, taking the place of Judge Frazier.)